**WASHINGTON KWIK–KAFE SERV-ICES, Inc., a corporation, Appellant,**

v.

**M & M RESTAURANTS, Inc., a corporation, and Denver E. McKaye, Appellees.**

**No. 12803.**

United States Court of Appeals District of Columbia Circuit.

Argued Nov. 23, 1955.

Decided Jan. 26, 1956.

Mr. Arthur J. Hilland, Washington, D. C., with whom Mr. Thomas N. Kindness, Washington, D. C., was on the brief, for appellant.

Messrs. Robert F. Skutch, Jr., and Mark D. Coplin, Baltimore, Md., each of the bar of the Court of Appeals of Maryland, pro hac vice, by special leave of Court, with whom Messrs. Alfred L. Bennett and Maurice A. Guervitz, Washington, D. C., were on the brief, for appellees.

Before WILBUR K. MILLER, BAZELON and FAHY, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

Washington Kwik-Kafe Services, Inc., sued M & M Restaurants, Inc., and Denver E. McKaye, its president, alleging that on or about September 11, 1951, the defendants falsely represented to it that M & M had the exclusive food and beverage concession in the United States Naval Gun Factory in the District of Columbia; that the plaintiff believed and relied upon the representation and was induced thereby to contract with M & M for the privilege of installing and operating coffee vending machines in the gun factory; that plaintiff agreed to pay to M & M for the privilege a commission of 25 per cent of its gross receipts and agreed to pay also certain sums for electrical current used in operating the vending machines.

The contract was carried out by both parties from about October 6, 1951, to about October 27, 1952, when it was terminated in a manner not material here. During that period Kwik-Kafe paid M & M under the terms of the agreement the sum of $12,436.58. The plaintiff alleged that on or about November 20, 1952, it learned that M & M's concession contract was not in fact exclusive and that defendants knew it was not when they represented that it was. For this alleged deceit, Kwik-Kafe sought to recover the sums paid by it under the contract, with interest, and the further sum of $5,000. as punitive damages. At the conclusion of the evidence, a verdict for the defendants was directed. This appeal is from the judgment entered thereon.

It appears from the evidence that early in 1951 plaintiff's president, James M. Bowen, approached the Board of Governors of the gun factory cafeterias seeking the privilege of installing his company's machines. James P. Minot, chairman of the Board, referred him to M & M. Bowen testified he then went

to McKaye, who told him M & M had the exclusive right to sell beverages in the factory; that he, Bowen, then said, "Mr. McKaye, I have dealt with so many people who purport to have authority to contract that way I just can't take your word for the matter." Bowen further testified that McKaye asked if he would take the word of the chairman of the Board of Governors, to which he replied he would. Thereupon, said Bowen, he talked by telephone with Chairman Minot, who assured him that he must contract with M & M in order to come into the gun factory, as that company had the exclusive right.

It seems to be agreed that the original written agreement of December 1, 1949, between M & M and the Board of Governors did not refer to the installation of vending machines and did not purport to give M & M an exclusive concession with respect to them. It clearly appeared from the evidence, however, that both contracting parties regarded their agreement as granting to M & M the exclusive right to sell food and beverages in the factory. The minutes of the Board of Governors of July 27, 1951, long prior to the execution of Kwik-Kafe's contract, contains the following:

> "At a meeting of the Board of Governors, Naval Gun Factory cafeterias, on 28 June 1951, the Board unanimously agreed that if coffee vending machines are installed in the Gun Factory, installation will be made through the M & M Restaurants, Incorporated."

In these circumstances it may well be doubted whether the representation that M & M had an exclusive concession was false, even though the original contract was silent on the subject. But whether it was false or not, it is clear from Bowen's testimony that Kwik-Kafe did not rely on the representation made by M & M's president. He expressly refused to do so and relied instead upon the representation made by the chairman of the Board of Governors. We observe also that Kwik-Kafe did not allege or offer to prove that it could have obtained the right to install its machines from the Board of Governors at a smaller commission than that it paid to M & M. The evidence shows that it could not have obtained the privilege in that fashion.[1]

Since Kwik-Kafe did not rely upon the alleged false representation, its action for deceit failed and the trial court properly directed a verdict for the defendants.

Affirmed.

---

1. Bowen testified, as we have seen, that the chairman of the Board told him he would have to contract with M & M if he wanted to come into the gun factory.